**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 18-CR-1888-L |
| Plaintiff, | ORDER: |
| v. | (1) DENYING MOTION TO SUPPRESS STATEMENTS [ECF NO. 19]; |
| MARIA HERNANDEZ, | (2) DENYING MOTION TO SUPPRESS CELL PHONE EVIDENCE [ECF NO 19]; and |
| Defendant. | (3) GRANTING SUPPLEMENTAL DISCOVERY MOTION [ECF NO 24.] |

Currently before the Court are Defendant's Motion to Suppress Statements and Cell Phone Evidence, along with Defendant's Supplemental Discovery Motion to Suppress Statements. The Court has considered the pleadings and exhibits, and for the reasons outlined below, **DENIES** in part and **GRANTS** in part Defendant's Motions.

//

//

//

## I. FACTUAL BACKGROUND

On March 17, 2018, at approximately 1:55 am, Defendant applied for entry into the United States at the Calexico West Port of Entry. She was driving her white Nissan Versa. A Human and Narcotics Detector dog alerted to the doors of the vehicle, after which a Customs and Border Patrol ("CBP") officer pried open the rear driver side door panel and observed packages taped to the walls. In secondary inspection, agents discovered 50 packages of a white crystalline substance taped to the inside of all four door panels. The contents of the packages field-tested positive for methamphetamine and weighed approximately 24.6 kilograms. Defendant was arrested.

Following her arrest, Defendant was placed in a holding cell at the Port of Entry. Homeland Security Investigations ("HSI") Special Agent Jonathon Creiglow went to Defendant's holding cell and asked her in Spanish for some biographical information and whether she had a cellphone or money with her. (Dec. Agent Creiglow, Government's Opposition, Ex. 1 [ECF NO. 25-1]) There is no video or transcript of the interview. Agent Creiglow did not provide Defendant with *Miranda* warnings before these questions. (*Id.*) According to Agent Creiglow, Defendant answered the biographical questions and told Agent Creiglow that the CBP officers had her cell phone and she did not have any money. (*Id.*)

Once the booking paperwork was completed, Agent Creiglow transferred Defendant from the holding cell to an interview room. At approximately 7:18 am, HSI special agents Greiglow and Marroquin interviewed Defendant. The interview was conducted in the Spanish language. The officers read Defendant her *Miranda* rights from a pre-printed card. Defendant said she wasn't sure about answering any questions without an attorney. The interviewing agent stated that the decision was hers, and that this was an opportunity for her to tell her side of the story. She agreed speak to the agent and signed the *Miranda* form. During the ensuing interrogation, she said she would like to speak to an attorney, but after the agent again said this would be her only chance to speak with him, she continued to talk with him.

2

Toward the end of the interview, Agent Creiglow requested permission from Defendant to look at her phone, and she demonstrated the passcode by drawing a pattern on the screen which resembled a square. (*Id.*)

On June 13, 2018, agents obtained a search warrant to conduct a search of the four cellular phones and two SIMS cards found on or among Defendant's possessions, which included the cell phone Defendant had on her person the day of her arrest. The forensic analyst used the pattern that the agents obtained from Defendant at her arrest to access the contents of the phone.

## II. PROCEDURAL BACKGROUND

Defendant was charged by Indictment on April 11, 2018, with one count of Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952 and 960. Defendant pled not guilty to the charge. On June 29, 2018, Defendant filed a Motion to Suppress Statements and Results of the Cell Phone Search. The Government filed a Response in Opposition on July 6, 2018. The Court held a hearing on the Motion on July 16, 2018 and shortly after issued an Order denying the Motion in part, and ordering further briefing. On July 24, 2018, Defendant filed a Supplemental Motion to Suppress, and the Government filed an Opposition to the Motions on July 30, 2018.

## III. DISCUSSION

*A. Motion to Suppress Statements*

Defendant challenges the admission of her post-arrest statements on two grounds: first, she alleges that her request for counsel was ignored by the agent and instead he continued to question her in violation of her *Miranda* rights; second, Defendant claims that the circumstances surrounding her interrogation, including being in custody for over five hours and her ignored requests for the assistance of an attorney, rendered her statements involuntary. (Mot. at 7).

The Government claims it will not use Defendant's post-arrest statements during its case-in-chief, rendering any objection based on a *Miranda* violation moot. (Govt. Oppo. Mot. Suppress at 4 [ECF NO 20.]) However, the Government contends that

3

Defendant's statements were voluntary and are admissible to impeach her or any other witness. (Govt. Opp. Suppl. Mot. at 8 [ECF NO 25.]) The Government argues that the recorded video shows that the interview was calm and conversational, and the agents did not display their weapons or raise their voices. (Oppo. at 5.) In short, the Government contends there was no law enforcement coercion, therefore the Motion should be denied. (*Id*. at 9).

At the July 16, 2018 hearing, the Court addressed the *Miranda* violation and ultimately held that Defendant made a clear request for counsel during her interview, therefore all statements following that request must be suppressed.[1] Because the Government represented that it will not use those statements in its case-in-chief, the Court held that Defendant's *Miranda* challenge is moot. The Court deferred ruling on the voluntariness issue until further briefing took place.

As to voluntariness, it is the Government's burden to prove by a preponderance of the evidence that a criminal defendant's statement was voluntary. *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981). Under the Fifth Amendment, a suspect has the right to remain silent and choose to speak only of his own free will. *Malloy v. Hogan*. 378 U.S. 1, 8 (1964). A statement made as a result of physical intimidation or psychological pressure is considered involuntary. *Townsend v. Sain*, 372 U.S. 293 (1963). Subtle psychological pressure executed by law enforcement suffices, and at times more effectively, to render a confession involuntary. *Tingle*, 658 F.2d at 1335. The Court must conduct a factual inquiry to determine whether a statement is involuntary, focusing on law enforcement's conduct in creating pressure, and the defendant's ability to resist that pressure. *Mincey v. Arizona*, 437 U.S. 385, 399 (1978). "The due process test takes into consideration the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States,* 530 U.S. 428, 434, (2000). These details include "duration and conditions of detention . . . the manifest attitude of the

---

[1] The Court held that Defendant's statement "[W]e can uh, I talk first with the lawyer and then from there, then we talk" constituted invocation of her right to counsel, and all statements after that point were excludable on that basis.

4

police toward [her], [her] physical and mental state, the diverse pressures which sap or sustain [her] powers of resistance and self-control—is relevant." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).

The Court has viewed the video recording of Defendant's post-arrest interrogation and after weighing the details of the interrogation, finds that Defendant's statements were voluntary. Agent Creiglow conducted the interview in a calm manner, asking questions and explaining the process in a normal tone. Defendant was Mirandized. Defendant's answers to the agent's questions were often nonresponsive, however the agent did not raise his voice but instead calmly repeated the question and why it was important for her to be honest with him. Neither agent unholstered his weapon or made any express or implied threats to Defendant. Agent Creiglow explained to Defendant that it would be beneficial to her to be honest and forthright immediately, stating more than once that he believed she was not the most culpable person involved in the crime.

Defendant is correct that she was held for five hours before the interrogation began, however weighing this factor against the overall tone and conditions of her interrogation, this delay did not appear to weaken Defendant's ability to assert her rights as her repeated requests for counsel demonstrates, nor answer questions or understand the proceedings. In short, there was no evidence of coercion by either psychological or physical means. The totality of the circumstances do not support Defendant's contention that her statements were involuntary. *Dickerson,* 530 U.S. at 434. In light of the above, the Court **DENIES** Defendant's Motion to Suppress Statements.

*B. Motion to Suppress Results of Cell Phone Search*

Defendant argues that the results of the cell phone search must be suppressed because the agent obtained her passcode after she invoked her right to counsel, thus violating her *Miranda* rights. She contends that the demonstration of her square pattern passcode was testimonial in nature, therefore it was a protected statement made pursuant to a custodial interrogation. (Supp. Brief. at 7). In addition, she contends the warrantless search of the cell phone does not come within the border search exception to the warrant

5

requirement, but was instead conducted as part of further investigation of the drug smuggling. (Supp. Brief. at 6). She further contends that the passcode demonstration during her post-arrest interrogation was not voluntary because her will was overborne by the circumstances, including the over five hour detention prior to the interrogation and her repeated and ignored requests for counsel. (*Id*. at 8). Defendant contends that she did not consent to the search of her cell phone in her holding cell interview despite Agent Creiglow's claim to the contrary. (*Id*. at 8).

In response, the Government first notes that it does not intend to use the demonstration of her passcode at trial, therefore the voluntariness of the actual demonstration of the code is not in play. (Govt Oppo at 10). Instead, the Government intends to introduce Defendant's statement acknowledging that the phone belonged to her under the routine booking exception, and offer the contents of the phone, or the fruits of the search, at trial. (*Id*.) According to the Government, Defendant willingly gave Agent Creiglow her cell phone passcode during the holding-cell interview, and then again during the post-arrest interrogation. The Government assumes without conceding that Defendant's demonstration of the passcode was a statement for purposes of *Miranda*, but argues that the physical fruits of a *Miranda* violation are not subject to the exclusionary rule, citing *United States v. Patane*, 542 U.S. 630, 637 (2004). It is further asserted by the government that the border search exception applies because it was not a forensic search but only a cursory search of the phone consisting of manually scrolling through it. (Oppo. 7).

   1. *Border search exception*

The government must generally demonstrate probable cause to obtain a warrant to search the property of a suspect, and the search must be reasonable. *Riley v. California*, 134 S.Ct 2473, 2482 (2014). A recognized exception exists for border searches, where there is a recognized right of the sovereign to control who and what enters the country. *US v Flores-Montano*, 541 US 149, 152-53 (2004)("The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border.")

"Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant," *US v Montoya de Hernandez*, 473 US 531, 538 (1985). Although reasonable suspicion is required to conduct an exhaustive search of an electronic device at the border, a less intrusive routine search at the border does not generally require reasonable suspicion. *US v Cotterman* 709 F.3 952 (9th Cir 2013).

Defendant argues that the exception does not apply here because the search was not done at the border upon her arrest in an effort to control the entry of unwanted contraband, but instead was conducted as part of an investigation for gathering additional evidence of an already completed crime. (Supp. Brief. at 6) In response, the Government cites numerous cases from this district in which the Court has rejected attempts to draw a distinction between pre-arest/contraband searches and post-arrest/investigative searches, concluding that *Cotterman* applies and allowing cell phone searches at the border. (Oppo. at 7).

The Court agrees, as it indicated during the July 17, 2018 hearing, and finds that the border search exception applies to the search conducted by agents of the cell phone under *Cotterman*.

*2. Miranda violation and fruits of search*

It is axiomatic that a suspect must be given *Miranda* warnings prior to custodial interrogation to protect the right against self-incrimination guaranteed by the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436 (1966).

The parties assume without conceding for purposes of this Motion that Defendant's demonstration of her passcode was testimonial in nature, therefore it falls within the purview of statements protected by *Miranda*. As such, the agent's request for Defendant's cell passcode after she invoked her right to counsel was a violation of her *Miranda* rights, and her subsequent demonstration of the passcode is subject to suppression. *Chavez v.*

*Martinez,* 538 U.S. 760, 790 (2003).[2]

The code was used to access the contents of the cell phone by Agent Creiglow during the interrogation, and again by the forensic analyst after the Government obtained a search warrant. As such, the contents would not have been discovered but for Defendant's demonstration of the passcode after her invocation. Defendant contends that the contents must be suppressed because they are the fruit of a *Miranda* violation. Generally, the physical fruits of a coerced statement must be excluded when necessary to protect the privilege against self-incrimination. *Patane*, 542 U.S. 630. However, "[w]here there is no evidence of coercion or a denial of due process in elicitation of the statements, the object of the fifth amendment exclusionary rule—assuring trustworthiness of evidence introduced at trial—is not served by barring admission of the derivatively obtained evidence or statements." *United States v. Gonzalez-Sandoval,* 894 F.2d 1043, 1048 (9th Cir 1990). In determining the existence of coercion, the Court looks to the totality of circumstances including: "the age of the accused, [her] intelligence, the lack of any advice to the accused of [her] constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).

As noted above, the conditions surrounding Defendant's interrogation do not demonstrate the kind of psychological or physical duress needed to show involuntariness. Accordingly, the Court concludes that Defendant's demonstration of her passcode after requesting an attorney is subject to suppression for violation of *Miranda*, but the contents of the phone which were accessed by virtue of the passcode demonstration are not subject

---

[2] It is disputed whether Agent Creiglow asked for Defendant's cell phone passcode and searched the phone during the holding cell interview. Defendant states "I did not give the agent the passcode to unlock my cell phone or consent to a search of my cell phone." (Def. Supp Mot Ex. B) Agent Creiglow states in his declaration that he "asked Ms. Hernandez for permission to access her cellphone. She told me that she had no problem with me looking through her cellphone and that nothing would be found in her cellphone…I asked her if the cellphone required a passcode. She replied by reaching out her hand and unlocking the phone by swiping her finger in a pattern resembling a partial square." (Gov't Oppp Supp Mot Ex 1). However, whether Defendant gave the agent her passcode during the holding cell interview is only relevant if Defendant claims she was coerced into doing so and it was the only time she gave him that information, which was used to access the contents of the cell phone. Instead, she demonstrated the code for the agent during her interrogation, therefore it is immaterial whether she did or did not demonstrate the code for the agent during the holding cell interview.

to suppression. Accordingly, the Court **DENIES** Defendant's Motion to Suppress the Results of the Cell Phone Search.

*C. Supplemental Motion to Suppress Holding Cell Statements*

*Miranda* warnings are not required for routine booking questions, including biographical information necessary for booking. *See Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Routine booking questions do not include questions that are designed to elicit incriminatory admissions. *Id*. at 602, n 14. The purpose of routine booking questions is to "secure biographical date necessary to complete booking or pretrial services." *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir 2016).

Defendant argues that her statements to Agent Creiglow during her holding cell interview must be suppressed because he did not Mirandize her prior to speaking with her, and the questions do not fall within the routine booking questions exception. (Supp. Mot. 2) Specifically, Defendant seeks to suppress her statement denying that she had any money in her possession arguing that it was made involuntarily. (*Id*. at 4). She cites to the five hour wait before questioning began, and that she did not know she could refuse to answer the agent's questions because she had not received her *Miranda* warnings. (*Id*. at 4).

In response, the Government argues that the questions Agent Creiglow asked Defendant, including whether she had any money on her, are routine booking questions that do not require *Miranda* warnings. (Oppo. 6).

For the following reasons, the Court finds that the question regarding money was not a routine booking question. Agent Creiglow's question to Defendant about money in her possession was clearly not designed to elicit biographical information such as her name or birthdate. The Government asserts that the question concerning money in Defendant's possession is a routine question because "law enforcement officers cannot allow cash into a jail." (Supp. Mot. Oppo. 6). However, the arresting officers could have conducted an inventory search before Defendant was incarcerated without anyone asking her if she had money on her person. *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983) (An inventory search of a person under lawful arrest is an incidental administrative step following arrest and

9

preceding incarceration.) Moreover, Officer Creiglow did not need to ask the question before booking her into jail because jail officials were searching individuals as they were being processed for personal items such as money, at which time they could have discovered the cash.

To determine whether Agent Creiglow's question was likely to elicit an incriminating response, the Court looks to the circumstance surrounding her arrest. *See United States v. Solano-Godines*, 120 F.3d 957, 961 (9th Cir 1997). Defendant was arrested in a car with methamphetamine hidden within the doors, and Agent Creiglow acknowledged in his report that he thoroughly searched Defendant's "vehicle, personal items and wallet looking for evidence of drug smuggling payment." (Supp. Mot Ex A, Report). Although asking an arrestee if they have money on their person seems innocuous at first blush, but taken in conjunction with the circumstances surrounding Defendant's arrest, the question could likely have elicited an incriminating response. For the above reasons, the Court **GRANTS** Defendant's Supplemental Motion to Suppress her holding cell statement that she had no money on her person.

## IV. CONCLUSION

In light of the above, the Court **DENIES** Defendant's Motion to Suppress post-arrest statements, **DENIES** Defendant's Motion to Suppress cell phone search results, and **GRANTS** Defendant's Supplemental Motion to Suppress holding cell statements.

**IT IS SO ORDERED**

Dated: August 13, 2018

Hon. M. James Lorenz
United States District Judge